MARCUS BALL, Respondent, *v.* ARCHIBALD LINEY, Appellant.

A bailee of property, to which there are adverse claimants, has the right to refuse to deliver the same for such reasonable time as will enable him in good faith to investigate the facts as to the real ownership thereof. But after such time has elapsed, and after the owner has offered to give a bond of indemnity satisfactory to the bailee, a refusal to deliver the property is a conversion.

If such bailee desires to relieve himself from the embarrassment of conflicting claims and from the responsibility of deciding between them, he can do so by commencing a suit in the nature of a bill of interpleader against the different claimants, and thus have their rights to the property judicially determined.

After a conversion of property, the title still remains in the owner, and the property can be taken from the wrong-doer upon an execution against the owner in favor of a third person, sold, and the proceeds applied upon the owner's debt. In such case the wrong-doer can set up the seizure and sale in mitigation of damages. It is not the fact of the seizure which gives the defence, but that the property has been seized under such circumstances that the owner has had or could have the benefit of it.

Defendant had in his possession as bailee certain property belonging to plaintiff, which he refused to deliver up on demand. Subsequent to such refusal the property was seized and sold by virtue of an execution against one G., and the proceeds applied in satisfaction thereof. The sheriff at the same time had in his hands an execution against plaintiff, but nothing was done by virtue thereof. In an action for the conversion,—*Held*, that the fact that such execution was in the hands of the sheriff was not proper to be considered in mitigation of damages.

(Argued May 11, 1871; decided September term, 1871.)

APPEAL from order of the General Term of the Supreme Court, in the third judicial district, reversing judgment in favor of plaintiff, entered upon report of a referee and granting a new trial. (Reported below, 44 Barb., 505.)

This action was brought against the defendant, a warehouseman, to recover the value of certain goods stored with him by the plaintiff, and was commenced by the service of summons August 14, 1862. The complaint was served on the 18th day of October, thereafter, and alleged, in substance, that about April 1, 1862, the defendant received in store the plaintiff's goods, worth about $2,500 to keep until demanded;

that defendant collusively permitted third parties to take away some portion thereof; that plaintiff demanded the goods about August 5, 1862, of the defendant, offering to pay the charges thereon, but defendant unjustly refused to deliver same; wherefore, plaintiff demands judgment for $5,000., and interest from August 5, 1862.

The answer contains: 1st. A general denial.  2d. Denies the fraudulent and collusive removal by third persons, and alleges they were taken without defendant's knowledge or assent.  3d. Alleges that the residue were, about 1st of August, 1862, seized and taken by the sheriff of Rensselaer, on three executions (particularly described in the referee's report), in favor of third persons, two of which were against George G. Gregory, and the third against the plaintiff in this action, and were, by said sheriff, sold under said executions on the 16th of October, 1862.

The action was duly referred and tried before the referee. He reported in favor of the plaintiff for the entire value of the goods, with interest; and the defendant duly excepted thereto, and, separately, to such portions thereof and such decisions of the referee as were adverse to him.  The other material facts in the case are contained in the report of the referee, by which he found the following facts:

That, on the 31st day of March, 1862, and at the other times mentioned in the complaint in said action, the plaintiff was the sole owner of the goods and property mentioned in said complaint.

That the defendant, at the time aforesaid, in connection with his other business, kept a warehouse at the city of Troy, N. Y.

That, at the date aforesaid, the plaintiff sent the said goods and merchandise, in charge of one George G. Gregory, to the said warehouse of said defendant for storage.

That, on the day aforesaid, said defendant duly received said goods and merchandise and put the same into his said warehouse for storage.

That, on the day following such storage of said goods and

merchandise in said warehouse, and while they were in the keeping of said defendant, the said Gregory, with the knowledge of said defendant, marked the boxes and packages containing said goods and merchandise with the letters G. G. G., agent.

That said marks and letters were put upon said boxes and packages, by said Gregory, without the knowledge, authority or consent of said plaintiff.

That no contract was made in reference to the storage of said property when the defendant so received the same.

That, within a day or two after the delivery of said property to said defendant, the plaintiff called upon him and personally informed said defendant that said goods and merchandise belonged to him, said plaintiff, and were sent by him to his, said defendant's, warehouse for storage, and that said defendant must not allow said property to be removed without the order of the plaintiff, to which defendant assented.

That, on the day following the storage of said property with the defendant, as above found, the said Gregory, without the knowledge or authority of the plaintiff, left with the said defendant a paper of which the following is a copy:

" A list of articles stored by George G. Gregory, agent, with A. Liney, River street, Troy, N. Y. The said goods not to be given up without the consent of said George G. Gregory." [Here followed a list of the articles.]

That, on the 28th day of April, 1862, the plaintiff gave to the defendant a notice in writing, of which the following is a copy:

Mr. A. LINEY—*Dear Sir:* Mr. Gregory has furnished me with an invoice made by him of the goods in storage in your loft, and you will please hold the same subject only to my written order. The property is mine.

Yours,          M. BALL.

TROY, *April* 28, 1862.

That the defendant duly received said notice, and shortly thereafter told the plaintiff he would act upon it.

That, on the 15th day of May, 1862, said plaintiff went to the warehouse of said defendant and personally demanded his said goods, at the same time offering to pay all defendant's charges, and said defendant refused to deliver them to the plaintiff, alleging for a reason that he had been forbidden to do so by Gregory; that he was apprehensive of trouble about it, and wanted a delay until he could see Gregory. That said plaintiff thereupon offered said defendant a bond of indemnity upon the removal of said property, to be satisfactory to said defendant, and that said defendant refused to allow the plaintiff to have said property and goods.

That, on the 30th day of July, 1862, said plaintiff made personally a similar demand and with similar offers, and said defendant again refused to deliver said property to said plaintiff.

That, on the morning of the 5th of August, 1862, said plaintiff went again in person to said defendant, and again demanded of him the delivery to him, plaintiff, of his said goods, and offered to pay all charges thereon and to indemnify said defendant upon the removal, and said defendant refused to deliver said property at that time, but requested said plaintiff to call again in the afternoon. That, in compliance with said request, said plaintiff went again in the afternoon of that day to the warehouse of said defendant and again demanded his said goods, again offering to pay all defendant's charges and to indemnify him for their removal.

That, in the interval between the first and second visit of said plaintiff to said defendant on said day, said defendant consulted with George G. Gregory at the office of A. A. Lee, Esq., his attorney. That Gregory then forbade the delivery of said goods to said plaintiff, and said defendant, under the advice of his attorney, again refused to let the plaintiff have his said goods.

That, on the 6th day of August, 1862, the sheriff of Rensselaer county levied upon said goods, having in his hands two executions issued out of this court against George G. Gregory, one in favor of Henry B. Harvey for $5,386.46, upon a

judgment recovered January 26, 1861, the other issued by A. A. Lee, Esq., in favor of one John R. Jaffray and others for $1,234.01, upon a judgment recovered June 2d, 1862. That, at the time of the levy upon said goods by said sheriff, said defendant pointed out said goods, but in no way objected to the seizure of them by said sheriff.

That the said Harvey execution was issued to said sheriff August 2d, 1862, and the execution in favor of Jaffray and others August 4th, 1862. That there had been previously an execution issued to the said sheriff upon the said Jaffray judgment and returned wholly unsatisfied.

That no levy was ever made upon said property nor any authority asserted by the said sheriff in any way before said 6th day of August, 1862.

That on the 7th day of August, 1862, an execution was issued out of this court to the said sheriff against this plaintiff on a judgment recovered April 3, 1861, for $5,645.07, in favor of one Moses T. Clough.

That no formal levy was ever made upon the property in controversy under this last mentioned execution.

That on the 23d day of August, 1862, said sheriff advertised to sell the interest in said goods of said Gregory and this plaintiff, by one advertisement of sale, by virtue of several executions, the sale to take place on the 30th day of August, 1862. That said proposed sale was adjourned from time to time until October 16th, 1862, by posting up notices of adjournment attached to said first advertisement.

That on said 16th day of October, 1862, said sheriff opened a sale of said goods by stating publicly that he would sell the same under the execution in Harvey against Gregory, and thereupon immediately proceeded to and did sell goods on that execution alone, and said goods were bid off by Harvey for $1,200, and the proceeds of said sale were applied upon said execution of Harvey against Gregory; and that said goods were subsequently taken possession of by said Harvey, and kept and converted by him to his own use.

That said sheriff was indemnified by separate bonds in both

judgments for the levy and sale of said goods, and was also indemnified in both cases upon the application of the money bid upon said sale of said goods.

That, after such sale and such application of the proceeds, and after November 1st, 1862, said sheriff returned the execution in favor of Clough against this plaintiff wholly unsatisfied.

That the defendant withheld said goods from the plaintiff when demanded as aforesaid, with the intent and for the purpose of thereby benefiting the said George G. Gregory and in collusion with him.

That said merchandise, on the 15th day of May, 1862, was of the value of $4,000. And he ordered judgment for the plaintiff for that sum and interest. The defendant appealed from the judgment to the General Term of the third district, and the judgment was reversed and new trial granted. The plaintiff appealed to this court, giving stipulation for judgment absolute in case the order granting a new trial should be affirmed. The other facts appear sufficiently in the following opinion.

*John H. Reynolds* for appellant. Defendant's refusal to deliver made him liable as in an action for conversion. (2 Kent's Com., 566, 567; *Covell* v. *Hill*, 2 Seld., 384; *Bates* v. *Stanton*, 1 Duer, 85; *Rogers* v. *Weir*, 34 N. Y., 463, 469; *Wilson* v. *Anderson*, 1 B. & A., 456; *Holbrook* v. *Wright*, 34 Wend., 169.) Where right of action is once vested, it can be destroyed only by a release under seal, or by a receipt of something in payment or satisfaction. (*Beall* v. *Trull*, 23 Wend., 306; *Allair* v. *Whitney*, 1 Hill, 484; S. C., 1 Comst., 305; *McKnight* v. *Dunlop*, 1 Seld., 537.) As goods were not sold and applied in payment of plaintiff's debt, damages cannot be mitigated. (*Hanmer* v. *Wilsey*, 19 Wend., 91.)

*John B. Gale* for respondent. There was no conversion by defendant. (*Scovill* v. *Griffith*, 2 Kern., 509; *Solomon* v. *Dawes*, 1 Esp., 83; 2 Buls., 312; Buls. N. P., 46; *Green* v. *Dunn*, 3 Camp., 215; *Gunton* v. *Morse*, 2 Brod. & Bing.,

449 ; *May* v. *Harvey*, 13 East., 179 ; *Alexander* v. *Southey*, 5 B. & A., 247 ; *Spencer* v. *Blackman*, 9 Wend., 168 ; Edw. on Bailments, 56, 130, 287, 306, 558 ; *Hill* v. *Covell*, 1 Com., 522 ; *Martin* v. *Elwood*, 11 Paige, 376 ; *Bates* v. *Stanton*, 1 Denio, 79.) Assuming a conversion, the title was not changed, but continued in owner. (*Osterhout* v. *Roberts*, 8 Cow., 43 ; *Silsbury* v. *McCoon*, 3 N.Y., 379.) The proceedings under execution against plaintiff deprived defendant of the goods. (3 R. S., 5th ed., 644, § 13 ; *Ray* v. *Birdseye*, 5 Denio, 619, 625 ; *Lambert* v. *Paulding*, 18 John., 311 ; *Beals* v. *Allen*, id., 363 ; *Jones* v. *Atherton*, 7 Taunt., 56 ; *Cresson* v. *Stout*, 17 John., 116 ; *Van Winkle* v. *Udall*, 1 Hill, 559 ; *Peck* v. *Tiffany*, 2 N. Y., 451 ; *Fenton* v. *Folger*, 21 Wend., 676.) And subsequent sale under process of third party is available in mitigation of damages. (*Higgins* v. *Whitney*, 24 Wend., 379 ; *Sherry* v. *Schuyler*, 2 Hill, 204 ; *Whitaker* v. *Merrill*, 28 Barb., 526 ; 30 Barb., 389 ; *Curtis* v. *Ward*, 20 Conn., 204 ; *Silsbury* v. *McCoon*, 3 N. Y., 379.)

EARL, C. It is undisputed that the plaintiff owned the goods which were stored with defendant. Indeed, no effort was made upon the trial to impeach his title. The defendant was, therefore, bound, upon demand, to deliver the property to the plaintiff; and an unqualified refusal to do so would, in law, amount to a conversion. (*Rogers* v. *Weir*, 34 N. Y., 463 ; *Holbrook* v. *Wright*, 24 Wend., 169 ; *Wilson* v. *Anderton*, 1 Barn. & Ad., 456.) But the defendant insists, that he was so embarrassed by the conflicting claims to the property by the plaintiff and Gregory, that he was justified in not complying with plaintiff's demand.

It was undisputed upon the trial that Gregory was merely plaintiff's agent, and that, as such, he took the property to the defendant's warehouse. He could give the defendant no authority to detain the property from his principal. The defendant had the right to qualify his refusal to deliver the property to the plaintiff until he could in good faith investigate the facts as to the real ownership of the property, and

he could properly retain the property for a brief period for that purpose. But he had no right to ask that the plaintiff should get an order from Gregory, his agent, before he would make the delivery; and he had no right to call upon the plaintiff to litigate or quiet Gregory's claim. It does not appear that he prosecuted any inquiries as to the title of the property; and it does not appear that he had any reason to believe that it belonged to Gregory, for, when the latter brought it to the warehouse, he simply claimed to be agent, and marked his name upon the property as agent. But if the claim of Gregory had appeared to be more serious and better founded than it was, the defendant could not justify the detention of the property from the owner after he was offered a bond of indemnity, satisfactory to himself, against such claim. And, further, I can hardly conceive of a case where the bailee would be justified in detaining property from the real owner, from May 15 to August 6, nearly three months, to inquire into the title. The defendant, by his conduct, identified himself with Gregory, and, unless the executions which were issued furnish him a defence, he must stand or fall by his title. His retention of the property so long after he was offered a complete indemnity, satisfactory to himself, against the claims of Gregory, furnish a justification for the conclusion of the referee, that he withheld the goods from the plaintiff in collusion with and for the benefit of Gregory.

If, however, the defendant was so embarrassed by the conflicting claims of plaintiff and Gregory, each claiming to own the goods and to be his bailor, that he could not, even with a bond of indemnity, safely or properly deliver the property to the plaintiff, he could have relieved himself from all responsibility by promptly commencing a suit in equity, in the nature of a bill of interpleader against the plaintiff and Gregory, and thus had the controversy and the right to the property judicially determined. (Story's Eq. Jur., § 805, etc; *Wilton* v. *Anderton*, 1 Barn. & Ald., 450; Redfield on Car., § 712.)

Hence, it is quite clear that the defendant, prior to August 6, became liable to the plaintiff for a wrongful conversion of the property; and we will inquire whether anything occurred afterward to relieve him to any extent from responsibility.

It is not claimed that the executions against Gregory alone in any way affected the rights of the plaintiff; but the defence is based upon the execution against the plaintiff. Nothing was really done by virtue of the latter execution. The property was not sold upon it, and nothing was realized or applied upon it. The property was sold by virtue of the execution against Gregory as his property, and the proceeds applied upon it in satisfaction, *pro tanto*, of Gregory's debt. I do not, therefore, see how it can be claimed that the execution against the plaintiff in any way furnishes any defence. If the property had been sold under that execution, it would have been otherwise.

After a conversion of property, the title still remains in the owner, and the property can be taken from the wrong-doer upon an execution against the owner and sold, and the proceeds applied upon his debt, and the owner will thus have the benefit of the property; and in such case the wrong-doer can set up this seizure and sale, not as an entire defence, but in mitigation of damages, for the reason that it would be unjust for the owner to recover the value of the property after he has thus had the benefit of it. It is not the fact of the seizure that gives the defence, but that it has been seized under such circumstances that the owner has had, or could have, the benefit of it. But to protect the wrong-doer, as the law is settled in this State, the seizure must be at the instance of a third person, and not at the instance of the wrong-doer, or upon process in his favor.

In *Hanmer* v. *Wilsey* (17 Wend., 91), it was held that after the defendant had wrongfully converted a horse, he could not show in mitigation of damages that he had seized and sold the horse upon process in his own favor. But in *Higgins* v. *Whitney* (24 Wend., 379), the property had been tortiously taken by the defendant, and was afterward

taken from him by process against the plaintiff in favor
of a third party, and the court held that this could be
shown in mitigation of damages upon the ground that, with-
out any agency of the defendant, the property had, since the
conversion by him, been taken from him by legal process,
and applied to the plaintiff's use, by paying the debt which he
owed to a third person. In *Sherry* v. *Schuyler* (2 Hill.,
204), a similar case, the court say : " The evidence offered
(that the property had been taken from the wrong-doer upon
process against the plaintiff, in favor of a third person) and
rejected, was clearly admissible in mitigation of damages, as
it would have gone to show that, independent of any agency
on the part of the defendant, the property in question had
been applied to the payment of the plaintiff's debt, due to a
third person." In Connecticut, the courts hold, that the
seizure and sale of the property after it has been converted
upon process against the owner, can always be shown in miti-
gation of damages, even in cases where the process was in
favor of the wrong-doer himself. In *Curtis* v. *Ward* (20
Conn., 204), where it appeared in an action of trover brought
by A., against B., that subsequently to the conversion com-
plained of, B., had attached the same goods in a suit against
A., and having obtained judgment, levied his execution on
such goods, and had them applied in satisfaction of his debt
against A., all in due course of law, it was held that A. could
recover damages only for the original taking of the goods, and
the detention of them until they were regularly attached.
In this case the principle upon which such a defence in miti-
gation is allowed, is ably discussed in the opinion of the
court. Judge WAITE says : " The plaintiff resists this claim,
and insists that he is entitled to recover the value of the
goods at the time of the conversion, with interest. This
claim of the plaintiff would be well founded had he never,
subsequent to the conversion, received any benefit from the
property." " For it would be palpably unjust for the owner
to recover the full value of his goods in their application to
the payment of his debts, and then afterward recover that

value from another who has derived no substantial benefit from his property." While this case illustrates the principle upon which this defence in mitigation of damages is based, in allowing the defence to be based upon process in favor of the wrong-doer, it goes further than the cases in this State will warrant.

Hence, I am unable to see how the execution against the plaintiff furnishes any defence to this action. The property was seized and sold by virtue of the execution against Gregory. It matters not that the sheriff might have seized and sold the property as plaintiff's, or that he might have applied the proceeds of the sale upon the execution against the plaintiff. He did not do this. The owner of the execution against the plaintiff did not, so far as appears, claim or desire a sale upon his execution, and he did not claim to have the proceeds of the sale applied upon his execution.

The plaintiff lost and waived nothing by appearing at the sheriff's sale and objecting to the sale. The property remained his until he should receive in some way satisfaction for it (*Osterhout* v. *Roberts*, 8 Cow., 43), and he could claim it from and sue any person for it until he should procure satisfaction.

After the sale, the owner of the execution against the plaintiff did not claim the proceeds, but Harvey and Jaffray, the owners of the executions against Gregory, seem both to have claimed them, and the plaintiff interested himself to have the proceeds applied upon the Harvey execution instead of the other one. I do not see how this act of the plaintiff could affect his rights, so long as there was no proof or finding of the referee that he did anything to prevent the application of the proceeds upon the execution against himself.

I have thus, by the application of plain principles of law to the facts of this case, reached a conclusion adverse to the defendant. While it may be hard for the defendant to be obliged to pay for this property, he has brought the hardship upon himself by his unnecessary interference with the property and rights of another, and he must abide the conse-

quences of his own voluntary acts. The order of the General
Term must be reversed, and judgment upon the report of the
referee affirmed with costs.

All concur.

Judgment accordingly.