### MEEKS et al. v. SIMON.

(Common Pleas of New York City and County, General Term. February 6, 1893.)

CONVERSION OF CHATTELS—INNOCENT PURCHASER—DAMAGES.

   In an action for the conversion of a watch, it appeared that it was obtained by a third person from plaintiffs, falsely representing that it was for another person, who wished to purchase it on the installment plan, and thereupon it was taken to defendant and pawned. The person receiving the watch from plaintiffs gave them a paper purporting to be signed by the alleged purchaser, and, before the fraud was discovered, she paid several installments, representing that they were sent by the alleged purchaser. *Held*, that plaintiffs could recover from defendant, an innocent pledgee, only their actual damages, i. e. the market value of the watch, less the amount of the installments received.

Appeal from tenth district court.

Two actions by William F. Meeks and others against Lewis Simon for conversion. From a judgment in each case for plaintiffs, defendant appeals. Reversed.

Argued before BOOKSTAVER and BISCHOFF, JJ.

George Carlton Comstock, for appellant.

Samuel Johnson, for respondents.

BOOKSTAVER, J. These actions were brought in the tenth district court to recover from the defendant damages for the wrongful conversion of personal property, consisting of three watches, two of them of the alleged value of $40 each, and the third of the alleged value of $70. On the trial it was stipulated that the decision in one cause should control in the second action, and the parties proceeded to try the two actions together. It appeared from the evidence that the plaintiffs were in the business of selling watches, diamonds, and jewelry, and in the autumn of 1891 were the owners of the property in question. On or about October 24th, a Mrs. Hawkes called upon plaintiffs, and told them that she had a party by the name of Mrs. Primm who wanted a watch. There-

upon they gave her one of the watches in question to be delivered to Mrs. Primm, at the same time instructing Mrs. Hawkes to have Mrs. Primm sign a certain conditional bill of sale, which was given her in blank. When signed, this conditional bill of sale was to be returned by Mrs. Hawkes. When she received the watch, instead of taking it to Mrs. Primm, she took it to the defendant's pawnshop, where she pawned it for $15, receiving a pawn ticket of the defendant, No. 74,313. The next day, or the day after, Mrs. Hawkes reported to the plaintiffs that she had delivered the watch in question to Mrs. Primm, and gave them the printed conditional bill of sale, with the blanks filled in, and a signature at the bottom, purporting in words to be that of Mrs. Primm, which is as follows: "No. 660. This indenture witnesseth that I have this day rented and leased from W. F. Meeks & Co., of 9 Murray street, in the city of New York, the following goods and articles: Gold watch 479,046, for the use of which I promise to pay the sum of $4.00 on the day hereof, and $1.00 each and every week until the sum of $40.00 has been fully paid, when said W. F. Meeks & Co. agree to execute and deliver to me a bill of sale of said goods without further consideration; and I agree to keep in my possession the said property in trust for the said W. F. Meeks & Co., who neither parts with, nor do I acquire, any title thereto, until said sum shall be fully paid as aforesaid; and, in case default shall be made in any of the aforesaid payments, on a demand being made by the said W. F. Meeks & Co., I hereby agree to surrender and return to him the said goods, and allow him to keep and retain the money paid thereon for the use and rental thereof. In witness whereof I have this 24th day of October, 1892, set my hand and seal. [Signature] Primm. Residence, 450 Canal street. [Seal.]" On the back of the lease was indorsed the following: "No. 6,607. Address,————. Name, Primm. Remarks: watch, $40; October 24th, $4; $12; $2." When Mrs. Hawkes delivered this lease, she paid to the plaintiffs $5, which was indorsed in one of the blank spaces on the back of the conditional bill of sale. From time to time thereafter she brought in further moneys, and paid them to the plaintiffs on account of the watch referred to in this paper, telling them the money so paid was paid by Mrs. Primm, on account of the conditions of the contract, and each time plaintiffs credited the sum on the back of the paper against the value of the watch therein mentioned. The plaintiffs afterwards discovered that the money was not paid by Mrs. Primm, but was Mrs. Hawkes' own money. In this manner they received altogether on account of this watch the sum of $18 against its value. It thus appears by plaintiffs' evidence, which is undisputed, that on the watch No. 479,046 the plaintiffs received altogether $18, which was not at any time tendered back to any one by the plaintiffs. There is no charge in these actions of any bad faith or knowledge of the fraud upon the part of the defendant, and he is merely sued as a purchaser or pledgee of the watch for value. In addition to this, it appeared that the cost of this watch to the plaintiffs was $18 only,—exactly the sum which had been paid them for the watch by Mrs. Hawkes. Precisely the same facts appear as to the second watch, No. 442,804,

except that Mrs. Hawkes got it, alleging that it was for an Alice Primm, on the 25th November, 1891, and pawned it with the defendant on the same day. The third watch was obtained under precisely the same state of facts, except that Mrs. Hawkes got it on November 6, 1891, stating it was for a Mrs. Hughes, and pawned it with the defendant on the same day. The value of this watch, as alleged in the conditional bill of sale, is $70. It cost the plaintiffs $32.30, and it could have been replaced by them for the same money. It further appears that when the demand for these watches was made upon the defendant, the plaintiffs did not tender to him either the pawn tickets or the amount defendant had advanced on the watches, or any part thereof.

If the plaintiffs have the right to maintain these actions at all it must be upon the theory of a conversion, based upon a larceny of the watches by Mrs. Hawkes, and, as against the defendant acting in good faith, they could only obtain their actual damages; that is, the market value of the watches, or what it would have cost the plaintiffs to have replaced them. Wehle v. Haviland, 69 N. Y. 448. There does not seem to be a case precisely parallel to those under consideration, yet there are a number of cases in this state based upon the principles involved in these actions. Thus it has been held that after the conversion of the property the title still remained in the owner, and the property can be taken from the wrongdoer upon an execution against the owner, and sold, and the proceeds applied upon his debt, and the owner will thus have the benefit of the property. In such case the wrongdoer can set up this seizure and sale, not as an entire defense, but in mitigation of damages. Ball v. Liney, 48 N. Y. 14. Where the owner voluntarily receives the proceeds of the property wrongfully taken, or directs or assents to their application to his use, such facts may be shown in mitigation, the same as the receipt or application of the identical property taken by the trespasser. Torry v. Black, 58 N. Y. 191. Hence, in these actions, the defendant had a right to offset in mitigation of the damages of plaintiffs the sum of money received on account of these watches by them. Thus, from the value of the first watch, to wit, $18, should be deducted $18; from the value of the second watch, which was $18, should be deducted $11, the amount paid thereon; and from the value of the third watch, $32.30, should be deducted $23.30; and the justice who tried this case erred in giving judgment for the full amount without making those deductions. The judgment should therefore be reversed, and a new trial ordered in the court below, with costs to the appellant to abide the event, unless plaintiffs will consent to a reduction of the judgments as before indicated.