WILSON v. INTERNATIONAL RY. CO.

(Niagara County Court. July 10, 1916.)

1. SALES ⬅⬅202(5)—TRANSFER OF TITLE—PAYMENT AS CONDITION—WAIVER.
  Where plaintiff, under an executory contract of sale providing for payment on delivery, title to remain in plaintiff until payment, placed apples in a freight car designated by buyer, with the consent of defendant railroad, before payment by the buyer, title remained in plaintiff; there being no absolute delivery such as would waive condition of payment in advance.

  [Ed. Note.—For other cases, see Sales, Cent. Dig. § 546; Dec. Dig. ⬅⬅202(5).]

2. SALES ⬅⬅202(5)—EXECUTORY CONTRACTS—TITLE.
  Under Personal Property Law, art. 5, Sales of Goods, §§ 99, 101, subd. 1, added by Laws 1911, c. 571, the rule of the common law is not changed, but a condition of an executory contract of sale, providing for payment on delivery, title to remain in the seller until payment, is not waived by the seller loading the property in a freight car, where he expressly notifies the railroad company that title remains in him until payment is made by the buyer.

  [Ed. Note.—For other cases, see Sales, Cent. Dig. § 546; Dec. Dig. ⬅⬅202(5).]

3. CARRIERS ⬅⬅72—CARRIERS OF GOODS—RELATION TO SHIPPER.
  The relation of shipper and carrier does not attach until property has been delivered and accepted by the carrier for immediate transportation, and when the goods are not to be transported until further orders a carrier is only a depositary or bailee.

  [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 243–250, 258–261, 266–269; Dec. Dig. ⬅⬅72.]

4. CARRIERS ⬅⬅72—RIGHTS OF SHIPPER.
  Where plaintiff, under an executory contract of sale, loaded apples in a freight car with the consent of the railroad company and notified the latter that title remained in plaintiff until payment by the buyer, the railroad company was liable to plaintiff for damages for refusing to deliver apples to plaintiff upon demand; such a refusal amounting to conversion.

  [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 243–250, 258–261, 266–269; Dec. Dig. ⬅⬅72.]

5. CARRIERS ⬅⬅72—RIGHTS OF SHIPPER.
  Where plaintiff loaded apples in freight cars after notifying the defendant railroad company that title to such apples remained in plaintiff until payment by buyer, and thereafter demanded return of the apples upon buyer's failure to pay, held, that railroad company, as bailee, had a right to defer delivery for a reasonable time to investigate title to such property, but its refusal thereafter to deliver goods to plaintiff was a conversion, for which it was liable.

  [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 243–250, 258–261, 266–269; Dec. Dig. ⬅⬅72.]

6. BAILMENT ⬅⬅16—LIABILITY OF BAILEE FOR REFUSAL TO DELIVER PROPERTY TO TRUE OWNER.
  The rule that an innocent purchaser under a defective title cannot hold personal property as against the true owner, although changed by the Factors Act (Laws 1830, c. 179), now Personal Property Law (Consol. Laws, c. 41) § 43, as to purchasers from agents clothed with possession

⬅⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by their principal, still applies to bailees, who are liable for conversion in refusing to deliver the property to the true owner.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 64–74; Dec. Dig. ☞16.]

7. BAILMENT ☞19—DELIVERY TO OWNER—LIABILITY—RIGHT TO REQUIRE BOND.

A bailee has no right to require an indemnity bond as a condition precedent to the delivery of property to its true owner.

[Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 85, 86; Dec. Dig. ☞19.]

8. CARRIERS ☞71—DELIVERY TO TRUE OWNER—RIGHT TO REQUIRE INDEMNITY BOND.

Carrier of goods has no right to require an indemnity bond as a condition precedent to delivery of goods to the true owner, who had loaded them onto a car placed on a track for the purchaser, who was not there to receive them, after notifying the carrier that title was not to pass until payment therefor by the purchaser.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 240–242, 247, 256, 257, 363, 561; Dec. Dig. ☞71.]

Action by Allen D. Wilson against the International Railway Company. Judgment for plaintiff.

Lee & Ward, of Lockport, for plaintiff.

Cohn, Chormann & Franchot, of Niagara Falls (John P. Langs, of Niagara Falls, of counsel), for defendant.

FISH, J. The evidentiary facts are undisputed. Plaintiff entered into an executory contract for the sale of a carload of apples with Rowe Bros., the apples to be delivered in car at Wrights, a station on defendant's line, to be paid for as each wagon load was delivered, and title to remain in plaintiff until paid for. Rowe Bros. thereupon and in November, 1909, ordered of defendant a refrigerator car for the apples placed, and the defendant placed the car thus ordered the next morning. The plaintiff thereupon, and on or about November 10, 1909, commenced to draw the apples thus contracted for to and load the same in this car. The plaintiff's son drew the first wagon load, and upon arrival at the station and before unloading asked defendant's station agent where Rowe was, to which the station agent replied that he had gone to Medina, but that he would be back that afternoon or the following morning. The plaintiff's son then told the agent that Rowe wanted the apples, as he supposed, for the car, and the agent showed him where the car was. The plaintiff's son told the agent that the apples were not paid for, and were plaintiff's until paid for, and the agent said he thought it would be all right if the apples were unloaded. The apples were unloaded into the car, and the plaintiff and his agents continued drawing apples to and unloading them into the car until November 13, 1909, when the car was loaded; and then the plaintiff's son told the agent that the apples were plaintiff's until paid for, and not to bill the car out for Rowe Bros.

The apples were not paid for, and two or three days later the plaintiff's son and others representing the plaintiff went to the car with wagons and commenced removing the apples; after some of the

apples had been removed from the car to a wagon, the defendant's agent stopped them, ordered them to replace the apples in the car, which was done, and the defendant sealed the car. On the same day the apples removed from the car were replaced in the car, and shortly thereafter one of plaintiff's sons called plaintiff on the telephone, and thereupon plaintiff talked with the agent and told him that the apples had not been paid for, that they were plaintiff's until paid for, and asking the agent why he did not let his man have the apples, and the agent said that the superintendent told him not to let plaintiff have the apples. A few days later plaintiff called on the agent at his office, asked him what the charges on the car were, the agent told him $7, which amount the plaintiff tendered, but the agent refused to take same. Plaintiff again on this occasion demanded the apples, but the agent refused to let him have them unless he would give an indemnity bond to protect the railroad in case Rowe Bros. should come back on the railroad for the apples, and the plaintiff refused to give indemnity, claiming the apples were his, that he was not obliged to give a bond, and that he would sue the defendant unless the apples were delivered. I find that the refusal to deliver the apples unless indemnity was given was on November 17, 1909. The apples were kept in the car at this station by defendant for two or three weeks after the car was loaded. The defendant is a common carrier of goods, engaged at the time in receiving goods at said station for transportation, and transporting same over its own and to connecting lines.

[1] The title to these apples was in plaintiff at the time he demanded them; the contract between Rowe Bros. and plaintiff for the apples constituted an executory contract of sale; there was no absolute sale and consequent passing of title, for a condition was attached that the apples were to be paid for upon delivery and were to be plaintiff's until paid for. Title would not pass to Rowe Bros. until this condition was performed, unless there was an absolute delivery of the apples in completion of the contract, or the condition was waived. Adams v. Roscoe Lumber Co., 159 N. Y. 179, 53 N. E. 805; Smith v. Lynis, 5 N. Y. 41; Osborn v. Gantz, 60 N. Y. 542; Van Buskirk v. Purinton, 2 N. Y. Super. Ct. 601.

[2] The Personal Property Law (article 5, Sales of Goods) does not change the rule of the common law. Sections 99 and 101, subd. 1, added by Laws 1911, c. 571. The condition attached to the executory contract of sale here was never performed. Assuming that the placing of the apples in the car was a delivery to Rowe Bros., it was only presumptive evidence of a waiver of condition; and whether there was a waiver or not became a question of fact, depending upon the intention of the parties and the circumstances surrounding the contract for and delivery of the apples in the car; and when we turn to the circumstances of the placing of these apples in the car, and the conversations held in relation thereto as above detailed, it quite clearly appears that the plaintiff did not waive the condition.

[3] The defendant, if it held these apples at all for Rowe Bros., held them as bailee, and not as carrier. The relation of shipper and carrier does not attach until property has been delivered to and accept-

160 N.Y.S.—24

ed by carrier for immediate transportation; and when the goods are not to be transported until further orders the carrier is only a depositary or bailee. O'Neill v. N. Y. C. & H. R. R. Co., 60 N. Y. 138; L. & L. F. Ins. Co. v. R., W. O. & O. R. R. Co., 144 N. Y. 200, 39 N. E. 79, 43 Am. St. Rep. 752; Michie on Carriers, § 1090; Hutchinson on Carriers (3d Ed.) § 112. In Michie on Carriers, § 1090, the author says:

"That test question is whether the carrier holds the goods only for the purpose of transportation, without further directions. * * * When goods are delivered to await further orders before shipment, or are detained at the request of the consignor, the liability of the carrier until such detention is that of warehouseman only."

In the instant case the party who placed the apples in the car notified defendant's agent that the apples were plaintiff's, and not to bill out the car.

[4, 5] The defendant, as bailee of these apples, had no right to detain them against the true owner; and when the plaintiff as such owner demanded them, it became the defendant's duty to deliver them to him, and its refusal to comply with that demand amounted to a conversion of the apples. Ball v. Liney, 48 N. Y. 6, 8 Am. Rep. 511; Rogers v. Weir, 34 N. Y. 463; McEntee v. N. J. S. Co., 45 N. Y. 34, 3 Am. Rep. 28; 3 Am. & Eng. Enc. of Law (2d Ed.) § 762; Western Trans. Co. v. Barber, 56 N. Y. 552; Bank of Oswego v. Doyle, 91 N. Y. 41, 43 Am. Rep. 634; Carroll v. Mix, 51 Barb. 212. The defendant, however, had a right, assuming it to be a bailee for Rowe Bros., to qualify its refusal to deliver the apples until it could in good faith investigate the facts as to the real ownership of the apples. It could have asked for, and was entitled to, if it asked, a reasonable time to make this investigation, and could have, in the meantime, retained possession of the apples. The defendant, however, made no such qualified refusal, it did not ask for time to look into plaintiff's title, its agent absolutely refused to deliver the apples unless an indemnity bond was given, and it remains to be determined whether it had the right to exact such a bond as a condition of the delivery of the apples. Plaintiff's ownership of the apples is not disputed; they were placed in a car furnished by defendant to Rowe Bros.; the defendant could have no greater right to the property than Rowe Bros. had, and they had no right at all as against the plaintiff. No element of estoppel enters into this case, as the defendant was informed of plaintiff's rights before the apples were placed in the car.

[6] It is a fundamental rule of our common law that no man can be deprived of his personal property without his consent, and that even an innocent purchaser under a defective title cannot hold the property as against the true owner. Saltus v. Everett, 20 Wend. 275, 32 Am. Dec. 541. This rule, in order to facilitate business, was changed in this state in the year 1830 by the Factors Act (Laws 1830, c. 179), now section 43 of the Personal Property Law (Freudenheim v. Gutter, 201 N. Y. 94, 94 N. E. 640), as to purchasers from agents clothed with possession by their principals; but I know of no change in the common law affecting the situation here.

[7] It is true a bailee is in a precarious position. If he delivers on the demand of a claimant, he may be called upon to defend the claimant's title; and if he does not, he may be mulcted in conversion by the claimant. But the law always aids the true owner in acquiring his property, and the bailee has a remedy by commencing a suit in equity in the nature of a bill of interpleader (Ball v. Liney, supra; 6 C. J. 1141); and all the authorities I know of agree that the owner cannot be called upon to give a bond as a condition of obtaining his property from a bailee. In 3 American & English Encyclopedia of Law (2d Ed.) at page 763, it is stated:

"It hardly seems consonant with the duty of the bailee to either party that he should be permitted to demand indemnity as a condition precedent to delivery. If a party has a right to the goods at all, he has a right to their delivery unhampered by conditions, and a bailee could hardly justify a refusal because indemnity had not been given."

And in 6 C. J. 1141, it is stated:

"It hardly seems consonant with the duty of the bailee to either party that he should be permitted to demand indemnity as a condition precedent to delivery."

Both authorities cite Banfield v. Haeger, 45 N. Y. Super. Ct. 428, in support of the text, although an examination of that case discloses that it does not entirely support the broad doctrine above quoted, as there property had been surreptitiously, without the consent or knowledge of the owner, placed in the hands of a warehouseman.

In Hutchinson on Carriers (3d Ed.) §§ 752, 753, the author says that a carrier is liable in conversion for failure to deliver the goods to the true owner on demand, although he may have a reasonable time to investigate the owner's title, and then in substance says that the carrier may generally avoid the expense and delay of an action in the nature of a bill of interpleader by delivering the property to the party who seems best entitled thereto upon being indemnified; but he does not say that a carrier is entitled to demand indemnity. The plaintiff having never parted with title to his apples, the same having been placed in the car after notice to defendant of plaintiff's title, and the very party who placed the apples in the car having demanded their return, I conclude that the defendant was not in this case entitled to demand indemnity, even if it was a bailee of the apples for Rowe Bros.

[8] Even if the defendant had assumed towards the apples the more onerous duties and obligations of a carrier, and actually held them at the time of the demand as a carrier for Rowe Bros., the weight of authority is that the same obligation would rest upon it to deliver the goods to the true owner on demand. Fitch v. Newberry, 1 Doug. (Mich.) 1, 40 Am. Dec. 33; Robinson v. Baker, 5 Cush. (Mass.) 137, 51 Am. Dec. 54; Railway Co. v. Jordan, 67 Kan. 86, 72 Pac. 533; Shellenberg v. F., E. & M. V. R. Co., 45 Neb. 487, 63 N. W. 859, 50 Am. St. Rep. 561; Georgia R. R. Co. v. Hass, 127 Ga. 187, 56 S. E. 313, 119 Am. St. Rep. 327, 9 Ann. Cas. 677; Wells v. Am. Ex. Co., 55 Wis. 23, 11 N. W. 537, 12 N. W. 441, 42 Am. Rep. 695. Hutchinson on Carriers, as heretofore stated, and Moore on Carriers

(2d Ed.) pages 209, 210, lay down the rule that the carrier must deliver to the true owner on .demand, although he may have a reasonable time to investigate the owner's title, and Michie on Carriers, § 856, assumes this to be the law. There are, however, two cases in opposition, one in South Carolina (Kohn v. R. & D. R. Co., 37 S. C. 1, 16 S. E. 376, 24 L. R. A. 100, 34 Am. St. Rep. 726) and the other in Washington (Switzler v. N. P. R. Co., 45 Wash. 221, 88 Pac. 137, 12 L. R. A. [N. S.] 254, 122 Am. St. Rep. 892, 13 Ann. Cas. 357). There was a dissent in the South Carolina case, and in the note appended to the report thereof in 34 Am. St. Rep. 726, it is stated that the rule therein laid down is only the law in South Carolina. While there may be exceptions to the rule as to carriers, depending upon the manner in which carrier obtains possession and whether demand is made at the point of origin, in transit, or at destination, or on other conditions, I do not think there should be an exception here, as defendant received the goods with notice of plaintiff's title.

In my view, however, of this case, defendant owed no duty to Rowe Bros., not even that of an ordinary bailee. Defendant placed the car for Rowe Bros.; it thereupon rested with them to load the car; a man comes along with apples for Rowe Bros., but they are not there to receive and pay for them, and he obtains permission from defendant to place them in this car. It did not hold the apples for Rowe Bros., and if there was any relation of bailor or bailee it was between plaintiff and defendant. There was no delivery of the apples by Rowe Bros. to defendant, either as an ordinary bailee or as a carrier, and there is no evidence in this case that Rowe Bros. ever made any claim to the apples.

The value of the apples at the time of the demand and refusal, November 17, 1909, was $192.96, and plaintiff is entitled to judgment in said sum, with interest from November 17, 1909, with costs.

Decision may be prepared accordingly.