## McMorris vs. Simpson.

Where a quantity of butter was put into the hands of an agent who was proceeding to the city of New York to sell, with directions *to do the best he could with it;* to *do as well with it as if it was his own;* and the agent, after endeavoring in vain to dispose of it in New York at a fair price, finding the market dull, sent the butter of his employer, *together with his own,* to a market at the south: *it was held,* that the judge was not authorized to instruct the jury that the agent was bound to sell in New York, *and not elsewhere;* that the question of excess of authority should have been submitted to the jury upon the evidence as to the usual course of business in relation to such matters.

Ordinarily, an action of *trover* will not lie by a *principal* against his *agent,* unless it appear that the *agent* has converted the property of his *principal* to his own use, or disposed of it contrary to his instructions; there must be some *act* on the part of the agent; a mere *omission* of duty is not enough, though the property be lost in consequence of the neglect. Nor will *trover* lie where the agent, though wanting in good faith, has acted within the general scope of his powers.

THIS was an action of *trover*, tried at the Delaware circuit in May, 1837, before the Hon. JAMES VANDERPOEL, then one of the circuit judges.

Both parties are farmers, residing in the county of Delaware. The defendant, when he went to market with his own butter, had been in the habit of taking and selling butter for his neighbors, for which he received a commission of fifty cents per firkin. In the fall of 1833, the plaintiff called on the defendant and asked him when he was going to New York, the defendant answered within a day or two; and the plaintiff then said he had left his butter in *Catskill,* (eleven firkins,) and wanted the defendant to take it and *do the best he could with it ;* the defendant answered that *he would do as well by it as if it was his own. Nothing was said by the plaintiff about the place where he wanted the butter sold.* The defendant asked the plaintiff if he had put any price on the butter; the plaintiff answered no, but wished the defendant to do as well by it *as if it was his own.*

The defendant went to New York, where he remained several weeks, endeavoring to sell the butter he had taken down: finding the market dull, and the price unsatisfactory,

he sent the butter in question, *together with his own and his son's butter*, to the south, to be sold by *H. & J. R. McLaughry*, who were residents of Delaware county. In October, 1835, the plaintiff brought an action of *trover* for the eleven firkins of butter.

A witness testified that the usual custom was to sell in New York; that the market was either Catskill or New York. Another said he had always understood the custom to be to sell in New York; he considered the custom well settled that the butter is to be sold in Catskill or New York. A third witness had known of several instances of butter being sent to other markets when it was dull in New York; a good deal of butter was sent south in the fall of 1833 with the *McLaughry's*; but the witness did not know that it was the custom for persons who took their neighbors' butter to sell, to send it abroad. *Gibbon* testified that he was in New York in the fall of 1833, found the market very bad, and let the *McLaughry's* have his butter to take south and sell. *Harkness* testified that he had butter on consignment, which he left with the *McLaughry's*, and they took it south; but he did not know they were going south when they took the butter. *Corbin* said he had dealt in butter several years; had sold for others in New York; has known of butter being sent to the south; that consignees frequently leave the butter in New York to be sold. He did not know that it was a general custom for persons having butter on consignment to send it abroad; it was most generally sold in New York; he knew no different custom in selling butter on consignment, or one's own butter. *Leal* said he had not known any custom of consignees sending butter abroad to sell. It was conceded by the plaintiff that the defendant had endeavored faithfully to dispose of the plaintiff's butter to the best advantage.

The defendant's counsel contended, and asked the judge to charge the jury: 1. That the defendant was liable only for fraud or gross neglect; that he was only bound to exercise ordinary attention and diligence; and if the jury believed that he had acted honestly and in good faith, and had bestowed ordinary attention and diligence in the sale of the

plaintiff's butter under the circumstances of the case, he was not liable; 2. That *trover* would not lie ; that the plaintiff should have brought *a special action on the case ;* and 3. That if *trover* did lie, no demand having been proved, the plaintiff could not recover. The judge held the law to be, and charged the jury, 1. That the defendant was bound to sell in New York, and not elsewhere; 2. That the defendant was liable, although he had been attentive and diligent in attempting to effect a sale of the plaintiff's butter, and had acted honestly and in good faith in sending it to the south with the *McLaughry's* for sale ; 3. That trover would lie ; and 4. That it was not necessary for the plaintiff to prove a demand of the butter; that sending it to the south for sale was of itself a conversion. The defendant excepted to each of these opinions, and the jury found a verdict for the plaintiff, which the defendant, on a *case* made, moves to set aside.

*N. K. Wheeler,* for defendant.

*A. J. Parker,* for plaintiff.

*By the Court,* BRONSON, J. I cannot see this case in so strong a light against the defendant as it was regarded by the judge on the trial. There was, at least, a fair question for the jury, which should not have been withdrawn from their consideration. The farmers in Delaware, instead of selling their butter at home, are in the habit of going to market themselves. Those who do not go, send by their neighbors, who receive a compensation for their services. The defendant received the plaintiff's butter to sell, with no other instructions or limit to his authority than that of *doing the best he could with the property,* or *doing as well by it as if it was his own ;* with those instructions he literally complied. After making a faithful and diligent, though fruitless effort to sell in New York at what was deemed a fair price, he sent the plaintiff's butter, *together with his own* and his son's butter, to the south, to be sold by the *McLaughry's.* It is admitted that he acted with perfect good

McMorris v. Simpson.

faith, but it is insisted that he went beyond his authority in sending the property to another market, and entrusting it with another agent.

It is not improbable that both parties supposed the butter would be sold in New York, and that the defendant would himself make the sale; but no such qualification of the defendant's authority was directly proved, and whether it could be fairly inferred from the circumstances of the case was a question for the jury. It appears affirmatively that nothing was said by the plaintiff about the *place* where he wanted the butter sold, and it also appears that butter was frequently sent south for a market when sales could not be advantageously made in New York. But it is said that this was only done by the *owners* of property—not by *consignees* and *agents*. Now, what was the defendant's commission but a license to act as though he were the *owner ?* The plaintiff says to him, " Do the best you can with my butter; do as well by it *as if it was your own.*" And besides, one witness who had known butter sent south, added, that he knew no different custom in selling butter on consignment, or selling one's own butter.

Then, as to entrusting the property to a sub-agent, one of the witnesses says, that consignees frequently leave the butter in New York to be sold. The mere fact of appointing a sub-agent, therefore, was not against the usual course of this business. And besides such an appointment is the necessary consequence of sending to another market, for none of the witnesses say that the owner or consignee of the property goes with it to the southern market.

The extent of an agent's authority may be gathered from his instructions, and the usual course of the business about which he is employed. In this case, whether we judge from what was said between the parties at the time, or the nature of the employment, we cannot but see that the plaintiff intended to give the defendant a very large discretionary power. What inference the jury would have drawn from the matters proved, had the question been left to them, I will not attempt to conjecture, but they certainly would not have been bound to find that the defendant had

rendered himself liable by departing from his authority. There was, at the least, room for serious question, whether the facts proved would warrant the conclusion drawn by the judge, that the defendant was bound to sell in New York, and not elsewhere.

It is said that the judge should have been requested to submit the question to the jury. The case specifies several points made by the defendant's counsel, on which the judge was requested to charge in his favor. It is then added that the judge held *the law* to be, and charged the jury, 1. That the defendant was bound to sell in New York, and not elsewhere," &c. The counsel must have understood the judge as meaning to say, that there was no question of fact for the jury—that as matter of law, on the facts proved, the plaintiff was entitled to a verdict. The case of *Read* v. *Hurd*, 7 Wendell, 408, and *Fitzgerald* v. *Alexander*, 18 id. 402, are decisive on this point.

The question whether, in any view of the case, this action of trover can be maintained, was discussed on the argument, and as that point may arise on another trial, it will be proper to give it some consideration. The most usual remedies of a principal against his agent are the action of *assumpsit*, and a *special action on the case ;* but there can be no doubt that trover will sometimes be an appropriate remedy. That action may be maintained whenever the agent has wrongfully converted the property of his principal to his own use ; and the fact of conversion may be made out, by showing either a demand and refusal, or that the agent has, without necessity, sold or otherwise disposed of the property contrary to his instructions. When an agent wrongfully refuses to surrender the goods of his principal, or wholly departs from his authority in disposing of them, he makes the property his own, and may be treated as a tort-feasor. But there must be some *act* on the part of the agent—a mere *omission* of duty is not enough, although the property may be lost in consequence of the neglect. Nor will trover lie where the agent, though wanting in good faith, has acted within the general scope of his powers. There must, I think, be an entire departure from his authority before this action for a

conversion of the goods can be maintained. The following cases will be found to support these positions. *Lyeds* v. *Hay*, 4 T. R. 260. *Murray* v. *Burling*, 10 Johns. R. 172. *Yaul* v. *Harbottle*, Peake's Cas. 49. *Severin* v. *Keppell*, 4 Esp. R. 156. *Anon.*, 2 Salk. 655. *Packard* v. *Getman*, 4 Wendell, 613. *Bromley* v. *Coxwell*, 2 Bos. & Pul. 438. *Owen* v. *Lewyn*, 1 Vent. 223. *Catlin* v. *Bell*, 4 Camp. 183, was an action of assumpsit, but trover might, perhaps, have been maintained.

In the case at bar, if the defendant was limited to a sale in the city of New York, and not elsewhere, the delivery of the property to a third person to be disposed of in another market, would, I think, be a conversion. But there must be a new trial, on the ground that the case belongs to the jury.

New trial granted.