Morris Freudenheim et al., Respondents, v. Selig Gütter et al., as Executors of Bernard Gütter, Deceased, Appellants.

Factors Act — construction and application of statute — when principal cannot recover goods pawned by an agent, although agent acted through another person.

The Factors Act (Personal Property Law, Cons. Laws, ch. 41, § 43) made possession, under certain circumstances, conclusive evidence of ownership to the extent necessary to protect a purchaser or a lender who acted in good faith and without notice. It thus shifted the loss caused by the fraudulent act of the agent from the innocent purchaser to the principal who selected the agent, intrusted him with possession of the property and placed him in a position where he could perpetrate the fraud.

The agent of a firm dealing in diamonds obtained a third person to pawn diamonds of the firm in the name of a fictitious person. The firm brought replevin against the pawnbroker. *Held*, that the fact that the agent gave some slight discretion to the person who acted for him and who pledged the goods in the name of an assumed principal, as to where he should pledge the diamonds and for what sum, would not prevent a jury from finding that the pawnbroker, if he acted in good faith, acquired a valid lien on the property under the Factors Act.

Any circumstances bearing upon the good faith and honest intention of the purchaser or pledgee is for the consideration of the jury, but the occupation of the person making the purchase or accepting the pledge has no other bearing.

*Freudenheim* v. *Gütter*, 137 App. Div. 918, reversed.

(Argued January 12, 1911; decided February 14, 1911.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 18, 1910, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court and an order denying a motion for a new trial.

On the 15th of January, 1907, the plaintiffs, who were diamond merchants in the city of New York, entered into a written contract with one Harry Levisohn by which they appointed him their agent and employed him as such "to carry as traveling salesman and sell" for them "a line of

mounted diamonds and watches" and turn the net proceeds over to them after deducting the compensation agreed upon. Before this Levisohn had been in business for himself and to carry out a compromise with his creditors including the plaintiffs, had turned over to them certain pawntickets given for goods pledged for him by one Feinberg to the defendant's testator among others. While Levisohn was serving the plaintiffs as traveling salesman, he was also in business on his own account and had an office in the city of New York, where Feinberg acted as his clerk and bookkeeper. On numerous occasions during the time he was on the road selling goods for the plaintiffs he sent by mail and express a quantity of diamonds which he had received from them for sale, to said Feinberg with direction to pledge them for him and raise money to meet certain of his obligations as they became due. He placed a price on each article and wrote Feinberg "to get as near to it as he could," sometimes designating the pawnbroker, including the defendants' testator, and sometimes telling him to "go to whomever you can get the most from." Feinberg did as directed, pledged the articles from time to time and deposited the money to the credit of Levisohn who used it to pay his debts.

Bernard Gütter, the defendants' testator, was a pawnbroker, duly licensed, and as such, between the 23rd of January and the 30th of July, 1907, made advances to Feinberg to the amount of $2,775 upon the faith of his possession of the goods so pledged as security. These goods were a part of those intrusted to Levisohn to sell as the agent of the plaintiffs and were their property. Ten different loans were made, ranging in amount from $200 to $325, and on each occasion some of said property was given in pledge to secure the loan then effected. Feinberg, under Levisohn's instructions, pledged the goods to Bernard Gütter "in the name of Levy," which was the name of an assumed principal, and the pawntickets were issued accordingly. Some time after the discovery of Levisohn's fraud he delivered the tickets to the plaintiffs. The articles thus pledged were worth the sum of

$3,106.43 and this action of replevin was brought to recover the possession thereof, or if possession could not be had, for damages in the usual form. The answer was in part a denial and in part a justification of detention by virtue of a lien alleged to have risen from the pledge of the goods to secure advances made in the manner above stated.

Upon the trial these facts among others were either proved or evidence to prove them was excluded under objection and exception. The court finally, in exercising its control of the order of proof, excluded all further evidence unless the defendants should first show that Feinberg was authorized by the plaintiffs to pledge the goods. The defendants were, therefore, compelled to rest and a verdict was directed in favor of the plaintiffs for a return of the property or for the value thereof, if a return could not be made. The defendants excepted to this direction as well as to the ruling excluding all further evidence, and asked to go to the jury upon all the questions raised by the pleadings and the evidence, but leave was refused and they again excepted. The judgment entered accordingly was unanimously affirmed by the Appellate Division and the defendants appeal to this court.

*Louis Marshall* for appellants. The plaintiffs having intrusted Levisohn, their agent, with the possession of the merchandise in suit for the purpose of sale, the defendants' testator acquired a valid lien for the money advanced by him on the faith of such possession, by virtue of the so-called Factors Act. (L. 1830, ch. 179; L. 1897, ch. 417, § 43; *Cartwright* v. *Wilmerding*, 24 N. Y. 529; *K. C. Mills* v. *Kuhne*, 129 App. Div. 250; *Brooks* v. *H. N. Bank*, 26 Fed. Rep. 301.) The fact that the merchandise which the plaintiffs intrusted to Levisohn for the purpose of sale was delivered by his clerk, Feinberg, to the defendants' testator to secure advances made by the latter on the faith thereof for Levisohn's benefit does not take the case out of the statute. (*Faulkner* v. *Brown*, 13 Wend. 63; *Tuthill* v. *Wheeler*, 6 Barb. 362; *Green* v. *Clarke*, 12 N. Y. 343; *N. Y. S. & T.*

*Co.* v. *Lipman,* 157 N. Y. 551.) The fact that the defendants' testator was a pawnbroker does not place him beyond the protective provisions of the Factors Act. (*Schmidt* v. *Simpson,* 139 App. Div. 509; *Ludwin* v. *Baruch,* 34 Misc. Rep. 544; *Oppenheimer* v. *Attenborough,* L. R. [1 K. B. 1907] 510; L. R. [1 K. B. 1908] 221.)

*Daniel P. Hays* and *Isaac H. Levy* for respondents. The defendants are not entitled to protection under the Factors Act, because they made no contract with Levisohn, to whom the owners had intrusted their merchandise for sale, but made their advances to one Feinberg, who was not intrusted by the owners with possession, and whose possession was tortious as against the owners. And defendants relied, not on Levisohn's possession, but on Feinberg's possession. (L. 1897, ch. 417, § 43; *F. Nat. Bank* v. *Shaw,* 61 N. Y. 283; *Pegram* v. *Carson,* 10 Bosw. 506; *Howland* v. *Woodruff,* 60 N. Y. 79.) The powers delegated by Levisohn to Feinberg were not merely ministerial powers, but involved the exercise of discretion, and it is conceded that discretionary powers cannot be delegated. (*Warner* v. *Martin,* 52 U. S. 209; *Lewis* v. *Ingersoll,* 3 Abb. Ct. App. Dec. 60; *Terry* v. *Bamburg,* 44 Conn. 358; *Burke* v. *Frey,* 44 Neb. 223; *Merchants' Nat. Bank* v. *Tremholm,* 59 Tenn. 520; *Moffitt* v. *Wood & Frey,* 1 Selden's Notes, 186.) The pledge of articles with a pawnbroker is not within the purview of the Factors Act. (*Schmidt* v. *Simpson,* 139 App. Div. 509.)

VANN, J. At common law there would be no defense to this action and the question presented for decision is whether the defendants can uphold their possession under the Factors Act. The plaintiffs insist that said act affords no protection, because, as they claim, the contract of the defendants was not made with Levisohn, to whom the owners had intrusted possession, but with Feinberg with whom the owners had no connection. The defendants insist that Feinberg was not an independent actor, but merely an instrument in the hands of Levisohn to deliver the merchandise and that as between them-

selves and all the world Levisohn, as the real contracting party, was the owner and pledgor.

The Factors Act, now in substance a part of the Personal Property Law, was passed in 1830, being modelled somewhat upon the English Factors Acts passed in 1823 and 1825, but differing from them so essentially as to make the English authorities of little value. (L. 1830, ch. 179; 4 George IV, c. 83; 6 George IV, c. 94.)

Our act is entitled "An Act for the amendment of the law relative to principals and factors or agents," but the amendment was of the common law, for there was no previous statute on the subject in this State. It consists of eight sections and a brief analysis thereof is necessary in order to get within the spirit and object of the legislature. The first section provides that every person in whose name any merchandise is shipped shall be deemed the true owner thereof so far as to entitle the consignee to a lien thereon for money advanced or negotiable instrument given. The second section limits the lien to such consignees as have no notice that the person in whose name the shipment was made was not the actual and *bona fide* owner thereof.

The third section, upon the construction of which the decision of this appeal turns, is as follows: "Every factor or other agent, intrusted with the possession of any bill of lading, custom-house permit, or warehousekeeper's receipt for the delivery of any such merchandise, and every such factor or agent not having the documentary evidence of title, who shall be intrusted with the possession of any merchandise for the purpose of sale, or as a security for any advances to be made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person, for the sale or disposition of the whole or any part of such merchandise, for any money advanced, or negotiable instrument or other obligation in writing given by such other person upon the faith thereof."

The fourth section excludes antecedent debts as a consid-

eration for any security founded on the merchandise or document, and the fifth authorizes redemption by the true owner upon repayment of the money paid or advanced. The sixth section places common carriers, warehousekeepers and other persons to whom merchandise may be committed for transportation or storage, without the range of the act. The seventh makes it a crime for any factor or agent to sell or pledge for his own use any merchandise intrusted to him or any documentary evidence thereof, contrary to good faith and with intent to defraud the true owner. The section closes with these words, " and every other person who shall knowingly connive with or aid or assist, any such factor or agent in any such fraudulent deposit or sale, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished," etc. The last section simply relates to the power of the Court of Chancery to compel discovery.

It is apparent from a study of this act and of the cases decided thereunder that the evil aimed at is the fraudulent disposition of merchandise by agents intrusted with the possession thereof for the purpose of sale, or of the documentary evidence of title thereto. At common law the true owner could reclaim the property when sold or pledged by the agent for his own benefit, even though he had possession thereof and was apparently the actual owner. This hampered trade, deranged business and frequently caused great loss to innocent persons acting in good faith. Merchants would not purchase property and bankers would not lend money, although the terms and security were satisfactory, because they were afraid that the person offering the property for sale or as security might not be the real owner thereof, and ordinarily there was no way to find out with certainty. Thus the evil to be remedied was the danger of dealing in personal property with one who had it in his possession and was apparently the owner thereof.

How did the statute meet this danger ? What is the nature and theory of the remedy provided ? The legislature did not simply make the fraudulent disposition of property

by the agent a crime, for that would have been of slight value, as doubtless it was a crime at common law. It went much farther and made possession, under certain circumstances, conclusive evidence of ownership to the extent necessary to protect a purchaser or a lender who acted in good faith and without notice. It thus shifted the loss caused by the fraudulent act of the agent from the innocent purchaser to the principal who selected the agent, intrusted him with possession of the property and placed him in a position where he could perpetrate the fraud. It relieved the purchaser by throwing the responsibility upon the one who appointed the agent. If all agents were honest no Factors Act would have been necessary. As, however, experience showed that some agents were not honest and that their dishonesty injured the public and disturbed commerce, the legislature made it a rule that he who selects an agent must select an honest one or stand the loss caused by his dishonesty, under certain circumstances. The main circumstance is the act of the principal in employing an agent and intrusting him with the possession of merchandise for the purpose of sale. Possession is the controlling word in the statute and the controlling fact in nearly all cases. Possession is evidence of ownership, and the statute makes it conclusive evidence that the agent in possession as the apparent owner is the real owner so far as necessary to protect *bona fide* purchasers from his fraud. It makes the owner vouch for the honesty of his agent. The real theory of the act is that the selection of the faithless agent and intrusting him with the property is the cause of the loss and, hence, that loss is placed not upon the third party who is wholly innocent, but upon the owner, because by appointing and trusting a dishonest agent he brought about the loss.

As was said in an early case in this court: " The act was intended to modify and make certain, in its practical application to the current transactions of trade and commerce, the general common-law rule, that, where one of two innocent persons must suffer loss from the act of a third person, such loss shall be borne by him, who has placed the third person

in the position which enabled him to do the act causing the loss. * * * And the benefits of the statutes and the custom (of merchants) are too evident, and too great to allow us to narrow the construction of the law. And there is no sound principle which would oppose a liberal view, tending to enlarge the facilities of transfer; since these acts but follow out the general rule, that every man is bound to take care not to select an agent, who will do acts to injure other persons. * * * A factor so situated can sell, or pledge the whole or any part of the property, or give upon it any lien or security for advances, or, in short, treat it as his own. Intrusted with the disposing control, he can exercise that control; and if he misappropriates the property or its avails, his principal must suffer — not the person who has dealt with the factor 'on the faith' of the position, in which the principal has placed him. * * * But our statute departed entirely from the common law; and, by making a factor's possession such evidence of ownership as to enable him to do all acts, which the true owner might, manifested a totally different intent from that of the English act. Substantially, it left an owner to use his precautions when he selected his factor; thereafter leaving him to be responsible for the acts of his agent, and protecting a *bona fide* third person in any transaction fairly effected with the apparent owner. And, for the benefit of trade, the statute said that the delays incident to following up the line of title, and the extent of authority, might be dispensed with, except so far as the statute itself retained them, that is, as to bailees receiving goods for carriage." (*Cartwright* v. *Wilmerding*, 24 N. Y. 521, 526. See, also, *N. Y. Security & Trust Co.* v. *Lipman*, 157 N. Y. 551, 562; *Howland* v. *Woodruff*, 60 N. Y. 73; *Stevens* v. *Wilson*, 6 Hill, 512, 513; *S. C.*, 3 Den. 472; *Kinston Cotton Mills* v. *Kuhne*, 129 App. Div. 250, 256; *Blydenstein* v. *New York Security & Trust Co.*, 67 Fed. Rep. 469; *Brooks* v. *Hanover Nat. Bank*, 26 Fed. Rep. 301; Mechem on Agency, § 995; Edwards on Factors and Brokers, §§ 7, 67, 107; Clark & Skyles Law of Agency, §§ 838, 840.)

In the case before us the jury could have found every requisite to bring the transaction within the statute, provided the evidence received or excluded under exception would have warranted the conclusion that Levisohn made the contract of pledge within the true meaning of the Factors Act, regard being had to its broad purpose and the method of working it out.    Levisohn did not make the contract in person, for he was not present when it was made, but it was made in his interest and by his direction.    Whose contract was it?    It was not Levy's, for there was no Levy.    It was not Feinberg's, for he did not assume to contract in his own name, and a contract in the name of a fictitious principal may be treated as a contract for an undisclosed principal, when there is one in fact.    The question is not whether Feinberg by his course became personally liable, but as to who made the contract that was in fact made.    That question is not answered by saying that no one had the right to make it, for there was a contract made by some one who had the power without the right and that power was given to Levisohn by the plaintiffs.    By intrusting him with possession and the power to sell they " enabled him to do all acts which the true owner might do." (*Cartwright* v. *Wilmerding*, *supra*, p. 532.)    Nor is it answered by saying that Levisohn could not have made it through Feinberg, upon the principle of *delegatus non potest delegare*, because that principle does not apply to a dishonest agent within the true meaning of the Factors Act, which treats the agent as the owner.    An agent cannot delegate his trust, but the statute does not regard the dishonest agent as acting as agent, but in his own behalf as principal, so far as third persons are concerned.    The trust reposed in him by his principal in appointing him an agent is the cause of the fraud he perpetrated in the view of the legislature, which declared that the one who reposed that trust should stand the loss from the fraud.

Even an honest agent, however, can designate an instrument or sub-agent to act under his direction to a greater or less extent, depending somewhat upon the known custom of

merchants in the locality. (*McMorris* v. *Simpson*, 21 Wend. 610, 612; *Toland* v. *Murray*, 18 Johns. 24, 26; Clark & Skyles Law of Agency, §§ 26, 27.) That custom in the city of New York could not be shown in this case owing to the abrupt exclusion of all evidence for the defendants unless a condition impossible of performance was complied with. Regardless of custom and according to the strict rule of agency at common law, Levisohn could use Feinburg as his messenger, or means of communication, to act pursuant to his written instructions, to deliver the goods, get the money and deposit it in the bank. While he was told to get as much as he could instead of a specified amount, that slight discretion was not a delegation of a trust confided to an agent.

The statute, however, deals not with honest, but with dishonest agents, and enables the innocent purchaser or pledgee to deal with them as if they were the real owners. It permits him to trust to appearances provided he acts in good faith. In its seventh section it contemplates that the agent may have some "other person" to "aid or assist" him in the transaction, for it makes such assistance criminal, if rendered with knowledge. Levisohn delivered the merchandise to Feinberg, told him to pledge it and how to dispose of the proceeds, giving him a limited discretion as to price only, and all that Feinberg did was pursuant to this direction. With full knowledge of all the facts, Levisohn adopted all of Feinberg's acts. (*Commercial Bank of Lake Erie* v. *Norton*, 1 Hill, 501, 507.) If Levisohn had acted in person, the pledge would clearly be covered by the Factors Act, but on account of the slight discretion as to price, it is claimed that the contract was not made by Levisohn, because an agent cannot delegate his power, although the theory of the act is that the agent is not acting as an agent but as a principal, who can delegate his power. In principle this is like the claim advanced in an English case that when an agent is authorized to sell, but not to pledge, the act does not apply when the property is pledged. The court, however, overruled the contention, saying that "This is the very kind of thing which the statute

was intended to meet." (*Oppenheimer* v. *Attenborough & Son* L. R. [1 K. B. 1907] 510 ; affirmed, L. R. [1 K. B. 1908] 221.)

The position of the plaintiffs involves a narrow construction of a statute enacted with the broad purpose of protecting the public from the acts of dishonest agents by throwing the loss arising from the breaches of trust upon the one who appointed them. It would be opposed to the " liberal view tending to enlarge the facility of transfer," spoken of in *Cartwright* v. *Wilmerding*. The statute would be shorn of much of its usefulness by a construction excluding from its protection one who did not deal with the furtive agent in person but with his instrument who received the property from him and acted under his direction in disposing of it, although in the name of a fictitious principal. Such a construction would open the door wide for the perpetration of the fraud which it was the object of the statute to prevent, for if such were the law the factor would always send someone to make the sale or pledge for him. I think the contract, as the jury could have found if all the evidence of the defendants had been received, was made by Levisohn, and that the defendants' testator, if he acted in good faith, which was also for the jury, acquired a valid lien on the property in question.

The fact that the defendants' testator was a pawnbroker has no bearing except on the question of good faith. Pawnbrokers are expressly authorized by law to exercise their calling, and, hence, are engaged in a lawful business. The Factors Act does not classify or qualify with reference to those it protects, except that it does not permit a common carrier, warehouseman or other person to whom merchandise or other property may be committed for transportation or storage only to sell or hypothecate the same. (§ 6.) If the legislature intended to exclude pawnbrokers why did it not say so when it excluded carriers ? Its omission to exclude them, and the phrase " with any other person," by necessary implication, makes the act of general application except as expressly

stated.   As the statute does not exclude any class in the community from its protection except as specified, the courts cannot hold that any other class is deprived of its benefits.   Any circumstance bearing upon the good faith and honest intention of the purchaser or pledgee is for the consideration of the jury, but the occupation of the person making the purchase or accepting the pledge has no other bearing.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Cullen, Ch. J., Gray, Haight, Werner, Hiscock and Collin, JJ., concur.

Judgment reversed, etc.