SAMUEL KIRSCH, Appellant, *v.* PROVIDENT LOAN SOCIETY OF NEW YORK et al., Respondents et al., Defendants.

Supreme Court, Appellate Term, First Department, May 22, 1947.

*Samuel Rubin* for appellant.

*Frederick M. Schlater* and *Nicholas S. Massas* for Provident Loan Society of New York, respondent.

*Samuel Kaufman* for C. Scholar Diamond Co., Inc., respondent.

HECHT, J.   Plaintiff appeals from a judgment of the City Court, New York County, dismissing his complaint on the merits at the close of the case.   Defendant Provident Loan Society had been permitted, with plaintiff's consent, to present its testimony before the close of plaintiff's case.

The action was brought for conversion of a diamond bracelet wrist watch owned by plaintiff.   Plaintiff entrusted this wrist watch to one Diamond, with instructions to pawn it with the defendant Provident and obtain a loan of about $500 on it. Diamond turned it over to one Goldman with the same instructions.   On August 18, 1941, a few days after it had been entrusted by plaintiff to Diamond, Goldman pledged the watch with defendant Provident as collateral for a loan of $415, which was paid to him in cash.

Provident used a form of signature card on which the pawnor was required to state whether he was the owner of the collateral pledged or whether he was the authorized agent for the owner. Goldman certified that he was the owner and signed the signature card in that capacity.   Thereupon Provident delivered

to Goldman its usual pawn ticket containing the information required by section 43 of the General Business Law, and *made out in the name of Goldman.*

Diamond testified that Goldman gave him the pawn ticket enclosed in the usual Provident folder, together with $415 in cash, and that later the same day he gave the folder and the cash to plaintiff without observing that the pawn ticket was made out in Goldman's name, and without informing plaintiff that the watch had been pledged by Goldman and not by Diamond.

Plaintiff testified that during the period of over thirteen months while the pawn ticket was in his possession, he never once took it out of the folder and therefore did not know that the ticket was made out in Goldman's name instead of his own. While this story seems incredible, we must accept it as true for the purpose of this appeal, inasmuch as the complaint was dismissed at the close of plaintiff's case. In any event, plaintiff concedes that he did not notify Provident that the watch belonged to him until October 6, 1942, which was after the events complained of herein had occurred.

The General Business Law contains the following provisions:

" § 43. *Certain entries to be made in book.* Every such pawnbroker shall keep a book in which shall be fairly written, at the time of such loan, an account and description of the goods, articles or things pawned or pledged, the amount of money loaned thereon, the time of pledging the same, the rate of interest to be paid on such loan, and the name and residence of the person pawning or pledging the said goods, articles or things.

" § 44. *Memorandum to be given.* Every such pawnbroker shall at the time of each loan deliver to the person pawning or pledging any goods, article or thing, a memorandum or note signed by him containing the substance of the entry required to be made in his book by the last preceding section °°°. The holder of such memorandum or note shall be presumed to be the person entitled to redeem the pledge and the pawnbroker shall deliver such article to the person so presenting such memorandum or note on payment of principal and interest. Should such ticket be lost or mislaid the pawnor shall at once apply to the pawnbroker, in which case it shall be the duty of the pawnbroker to permit such person to examine his books, and on finding the entry for said ticket, note or memorandum so lost and upon his giving to the pawnbroker an exact description of the article pawned the pawnbroker shall issue a second

or stop ticket for the same. In case such pawnor neglects to so apply and examine said books and receive such memorandum or note in the manner above stated, the pawnbroker will be bound to deliver the pledge to any person producing such ticket for the redemption thereof. This article is not to be construed as in any manner limiting or affecting such pawnbroker's common law liability in cases where goods are stolen or other legal defects of title exist in the pledgor.''

On June 6, 1942, Goldman appeared at Provident's office and signed a statement certifying that the pawn ticket was lost and that the collateral belonged to him, and therefore requested Provident to stop delivery of the collateral. Such a stop ticket is issued only to the pledgor of record. Provident satisfied itself that Goldman was the pledgor by (a) comparing his signature in the statement with the signature on the signature card, and (b) having him give an oral description of the collateral to a clerk, who then compared it with the collateral, which had not been shown to the pledgor. After doing this, Provident issued to Goldman its second or stop ticket, containing the date of the loan, the recital that the original ticket had been issued to M. Goldman, and the following statement: '' This ticket is issued to the person representing himself or herself to be the pawnor and present owner of original ticket. It is issued in accordance with the provisions of Section 44 of the General Business Law upon the representation that the original ticket is lost, destroyed or stolen. The issuance of this ticket confers no rights on the holder.''

Provident's practice was not to release the collateral upon presentation of the stop ticket. That ticket was not accepted as evidence of ownership, but was treated only as a warning not to surrender the collateral to anyone presenting the original pawn ticket. Once a stop is placed on an article, only the pledgor of record may redeem it by proving his ownership. Therefore, when Goldman tried to obtain the collateral two months after the stop ticket had been issued, he was required to sign an affidavit stating that he was then the sole and absolute owner of the collateral pledged. The affiant further deposed: '' * * * that the ticket issued to affiant in evidence of the loan above mentioned has been lost, destroyed or stolen, so that affiant is unable to find or produce the same; that he has not sold, transferred, assigned or in any manner disposed of the said ticket to any person whatsoever; that he has never authorized or empowered any person to redeem the said loan or in any manner to obtain possession of the article pawned

or pledged as aforesaid, unless by authorization accompanying this affidavit."

Goldman's signature on this affidavit was compared to the signature upon the original signature card; thereupon the watch was released to Goldman upon his payment of the principal and interest due on the loan. No bond was required from Goldman because it was Provident's practice to permit redemption without a bond where there was no dispute as to ownership. The watch was released on August 26, 1942 — more than a year after the original pledge. It was not until October 6th that plaintiff notified Provident that he was the owner.

Defendant C. Scholar Diamond Co., Inc., offered no testimony, but portions of the examination before trial of its president were offered as part of plaintiff's case. From this it appeared that Goldman came to Scholar's office apparently before August 26th, and offered to sell a watch which he had pawned with Provident. Scholar sent a representative with Goldman to Provident, with $453.17 to redeem the watch, and then paid Goldman an additional $162.50 on his delivery of the watch to it.

Defendant Provident relies upon subdivisions 1 and 3 of section 43 of the Personal Property Law (commonly known as the Factors' Act), the pertinent parts of which follow:

" 1. Every factor or other agent, * * * who shall be intrusted with the possession of any merchandise for the purpose of sale, or as a security for any advances to be made or obtained thereon, shall be deemed to be the true owner thereof, so far as to give validity to any contract made by such agent with any other person, for the same or disposition of * * * such merchandise and any * * * chose in action created by sale or other disposition of such merchandise, for any money advanced, or * * * obligation in writing given by such other person upon the faith thereof."

" 3. Nothing contained in the preceding subdivisions of this section shall be construed to prevent the true owner of any merchandise * * * from demanding or receiving the same, upon prepayment of the money advanced * * *."

The purpose of this legislation has thus been described in *Freudenheim* v. *Gutter* (201 N. Y. 94, 99–100) : " At common law the true owner could reclaim the property when sold or pledged by the agent for his own benefit, even though he had possession thereof and was apparently the actual owner. This hampered trade, deranged business and frequently caused great loss to innocent persons acting in good faith. Merchants would not purchase property and bankers would not lend money,

although the terms and security were satisfactory, because they were afraid that the person offering the property for sale or as security might not be the real owner thereof, and ordinarily there was no way to find out with certainty. Thus the evil to be remedied was the danger of dealing in personal property with one who had it in his possession and was apparently the owner thereof. * * * [The statute] made possession, under certain circumstances, conclusive evidence of ownership to the extent necessary to protect a purchaser or a lender who acted in good faith and without notice. * * * It relieved the purchaser by throwing the responsibility upon the one who appointed the agent. * * * The main circumstance is the act of the principal in employing an agent and intrusting him with the possession of merchandise for the purpose of sale. Possession is the controlling word in the statute and the controlling fact in nearly all cases. *Possession is evidence of ownership, and the statute makes it conclusive evidence that the agent in possession as the apparent owner is the real owner so far as necessary to protect bona fide purchasers from his fraud.* It makes the owner vouch for the honesty of his agent. The real theory of the act is that the selection of the faithless agent and intrusting him with the property is the cause of the loss and, hence, that loss is placed not upon the third party who is wholly innocent, but upon the owner, because by appointing and trusting a dishonest agent he brought about the loss.'' (Italics supplied.)

Plaintiff argues that the Factors' Act does not apply in this case, because he entrusted the watch to Diamond, while the actual pledge was made by Goldman to whom it had been entrusted by Diamond without the plaintiff's authority. This contention is unavailing, in view of the express holding to the contrary in *Freudenheim* v. *Gutter* (201 N. Y. 94, 102–104, *supra*) where an identical situation existed.

The effect of the contract made between Goldman and Provident is explained in *Mann* v. *Simpson & Co.* (286 N. Y. 450, 457), where the court said, per Conway, J.: '' We read them [subdivisions 1 and 3 of the Factors' Act] to mean this: One such as Gouldon who has been entrusted with the possession of a ring for the purpose of sale shall be deemed to be the true owner thereof so far as to give *validity* to *any lawful contract* made by Gouldon with any person for money advanced upon the ring. That means that when Gouldon entered into a contract with the pawnbroker defendant, that contract had *validity* whether it gave a pawnbrokers' lien with pawnbrokers' rates of interest or whether there were other and different provisions.

in it. *Validity* was given to that contract and the defendant may hold the ring under that valid contract and *enforce it* as against all except the true owner. As to the true owner it is a valid contract but he has a right not given to any one else. The contract between Gouldon and the defendant is still valid but it is not enforceable against the true owner if the latter takes advantage of subdivision 3 of the Factors' Act and, ' upon prepayment of the money advanced,' demands the return of the ring. *It would be valid and enforceable even against the true owner if he failed to make ' prepayment ' within a reasonable time after knowledge of the contract.''* (Italics in last sentence supplied; other italics in original.)

The lawful contract between Goldman and Provident, to which validity was given by the Factors' Act, was a contract of pledge, which is governed by the established common-law rule that the pledgee must release the collateral to the pledgor upon receiving payment of the loan for which the collateral was pledged as security. As was said in *Ocean National Bank of N. Y.* v. *Fant* (50 N. Y. 474, 476): " ° ° ° the court below was clearly right in holding that an agreement to restore these collaterals to the maker, on payment of the note, is to be implied from the transaction as stated in the instrument itself, and that the acts should be simultaneous. The right of the maker to receive these collaterals when he should pay the note stood upon the same footing as his right to the surrender of the note itself * ° *.''

And in *Schlesinger* v. *Wise* (106 App. Div. 587, 590) the Appellate Division of this Department said: " * ° ° the law seems to be well settled that where a party delivers to the holder of a note personal property as collateral security for its payment, when the note is paid the collateral security must be returned * * *.''

It is true that the pawnbroker has no personal claim against the pawnor and is confined to satisfying his claim out of the article pawned (*Stephens* v. *Simpson,* 94 App. Div. 298); but this does not diminish the pawnor's right to demand return of the pawn upon payment of the debt.

" Performance or tender of performance to the proper person of the obligation secured by the pledge terminates the pledge and entitles the pledgor to the possession of the pledged chattel '' (Restatement, Security, § 37, subd. [1]) and in this respect a pawn involving no personal liability on the part of the pawnor is no different from any other pledge (Restatement, Security, § 1, comments b, g).

This established common-law principle that the pledgor is entitled to possession of the pledged chattel upon payment of the debt, has not been affected by section 44 of the General Business Law, quoted (*supra*). That statute merely protects a pawnbroker, if he surrenders the pledge to someone other than the pawnor, if such other person presents the pawn ticket, unless the pawnbroker has previously issued a second or stop ticket on application of the pawnor in the manner prescribed in the section. (See *Johnson* v. *Praeger*, 59 App. Div. 339.) Because of such limited right attaching to possession of the ticket, this court has held that a delivery of the pawn ticket to another transfers the pawnor's right of redemption of the pledged article (*Stone* v. *Demarest*, 95 Misc. 543, 545). But a pawn ticket being issued in the name of the pawnor, lacks the essential requisite of a negotiable instrument, which " Must be payable to order or to bearer " (Negotiable Instruments Law, § 20, subd. 4).

The Factors' Act gives the contract between Goldman and Provident exactly the same effect as if Goldman were the true owner of the watch. Plaintiff, by entrusting the watch to Diamond, who in turn entrusted it to Goldman, had made Goldman his agent, " * *. * and the statute makes it conclusive evidence that the agent in possession as the apparent owner is the real owner so far as necessary to protect *bona fide* purchasers from his fraud." (*Freudenheim* v. *Gutter*, 201 N. Y. 94, 100, *supra*.)

" Intrusted with the disposing control, he can exercise that control; and if he misappropriates the property or its avails, his principal must suffer — not the person who has dealt with the factor ' on the faith ' of the position, in which the principal has placed him." (*Cartwright* v. *Wilmerding*, 24 N. Y. 521, 531.)

Treating Goldman as the true owner of the watch, Provident was required to return the article to him upon his payment of the debt, for which it had been pledged as collateral. That was one of the provisions of the contract between Goldman and Provident which had been given validity by the Factors' Act (*Mann* v. *Simpson & Co.*, 286 N. Y. 450, *supra*). Provident was not relieved of this obligation by Goldman's failure to produce the pawn ticket. Treating him as the owner, Provident was obliged to dispense with this requirement when he as owner had complied with the provisions of section 44 of the General Business Law by identifying himself as the pawnor and by giving an exact description of the article pawned, and when Provident, not having received any notice that anyone else had the pawn ticket, had destroyed its efficacy by issuing

the stop ticket prescribed by that section. That was the only effect of the stop ticket in this case: the watch was returned to Goldman not in reliance upon his possession of the stop ticket, but because he was a pawnor and was therefore treated by Provident as the owner. The contract of pledge between them was valid and enforcible against plaintiff as the true owner, because he failed to make prepayment or even to notify Provident of his ownership within a reasonable time after knowledge of the contract (*Mann* v. *Simpson & Co., supra*); he did not offer prepayment until October 6, 1942, after the expiration of the period of one year during which the pawnbroker was prohibited from selling the pledge (General Business Law, § 48).

This result, which imposes the loss caused by Goldman's dishonesty upon plaintiff, rather than upon Provident, carries out the purposes of the Factors' Act. "The real theory of the act is that the selection of the faithless agent and intrusting him with the property is the cause of the loss and, hence, that loss is placed not upon the third party who is wholly innocent, but upon the owner, because by appointing and trusting a dishonest agent he brought about the loss." (*Freudenheim* v. *Gutter*, 201 N. Y. 94, 100, *supra.*)

The foregoing disposes of plaintiff's contention that Provident should be held liable to plaintiff because they failed to require an indemnification bond from Goldman upon surrendering the watch to him. Since Provident treated Goldman as the true owner, it had no justification for demanding a bond from him when there was no notice of any adverse claim. Subdivision 3 of section 238 (formerly § 248, subds. 2, 3) of the Banking Law specifically provides that a savings bank shall not pay nor shall a depositor or anyone claiming through him be entitled to receive any deposit unless the passbook be produced. It was only because of this specific statutory authorization that a savings bank was held justified in requiring a bond where the passbook cannot be produced (*Krupp* v. *Franklin Savings Bank*, 255 App. Div. 15). But the rigor of this rule led to a subsequent amendment authorizing payments to be made upon court order. (*Myers* v. *Albany Savings Bank*, 270 App. Div. 466, affd. 296 N. Y. 562.)

Section 44 of the General Business Law contains no such requirement, but specifically provides that the effectiveness of the pawn ticket shall be destroyed by issuance of a stop ticket on the application of a pawnor in the prescribed manner. We would not be justified in reading into the statute

a provision like that contained in the Banking Law, which would frequently cause grave hardship to pawnors who were unable to obtain a bond, in order to protect one like plaintiff from the consequences of his own gross negligence in retaining the pawn ticket for over a year without noticing that it had been issued in Goldman's name (cf. *Thomson* v. *New York Trust Co.,* 293 N. Y. 58, 68–69).

The decision of this court in *Simpson* v. *Pilpoul* (77 Misc. 108) relied upon by plaintiff, has no bearing on the case at bar. There one Brodsky had pawned rings with Simpson, who issued the pawn tickets to him. Thereafter Pilpoul, who was Brodsky's sister, represented that she was the owner of the rings and had lost the pawn ticket. Simpson issued a stop ticket to her, then delivered the rings on presentation of the stop ticket. Here, however, Provident delivered the pledge to the original pawnor, whom plaintiff's conduct had clothed with all the indicia of ownership. Defendant Scholar stands in a different position. The Factors' Act is not a defense for it in respect of the advance of $453.17 which it made on the strength of Goldman's statement that he owned a watch which had been pawned with Provident, "But as the possession intended by the act is that which may enable a fraud to be perpetrated upon one acting on the faith of it as evidence of ownership, it is self-evident that actual possession is required as distinguished from constructive possession." (*Howland* v. *Woodruff,* 60 N. Y. 73, 81.)

Scholar is in no better position if Goldman actually exhibited the stop ticket to it. Though the act protects those who advance money to one " * * * entrusted with the possession of any bill of lading, custom-house permit, or warehouseman's receipt for the delivery of any merchandise * * * " (*Cartwright* v. *Wilmerding,* 24 N. Y. 521, *supra*), the document relied on must be one of those three which are specifically mentioned (*Soltau* v. *Gerdau,* 119 N. Y. 380, 393). When Scholar advanced the balance of $162.50 to Goldman on the faith of the possession of the watch, he had obtained such possession through common-law larceny by trick or device, and in such case the Factors' Act does not apply (*Sweet & Co.* v. *Provident Loan Society,* 279 N. Y. 540, 544–545; *Soltau* v. *Gerdau, supra,* pp. 388–392). Scholar is thus in a different position from Provident, which surrendered the watch to Goldman in accordance with pre-existing contract which was valid when made, because at that time he had rightfully acquired possession.

Scholar also relies on section 104 of the Personal Property Law, which reads as follows: " 1. Subject to the provisions of this article, where goods are sold by a person who is not the owner thereof, and who does not sell them under the authority or with the consent of the owner, the buyer acquires no better title to the goods than the seller had, *unless the owner of the goods is by his conduct precluded from denying the seller's authority to sell.*" (Italics supplied.)

This statute has been held to preclude the owner from denying the seller's authority to sell even though he acquired possession through larceny by trick, provided that the owner had done an affirmative act which put it in the seller's power to defraud the purchaser. In *Island Trading Co.* v. *Berg Brothers* (239 N. Y. 229) defendant sold goods to one Murat Bey for cash, and at his instructions mailed them to plaintiff, and delivered the postal receipts to Murat Bey on his assertion that he would get the cash and pay defendant; on the strength of the parcel post receipts and certified invoices Murat Bey collected on a letter of credit issued by plaintiff, but did not pay defendant, who then obtained the return of the goods from the post office. In affirming the judgment for plaintiff for conversion, the court said, per Pound, J. (p. 233): " * * * possession of the postal receipts was obtained by trick. In other words, that Murat Bey stole defendant's goods, that it was entitled to possession of them, did not assent to the transfer of ownership by him, and had the right to retake them (Williston on Sales [2d ed.], § 346), except for the circumstances of the sale to the subpurchaser, the plaintiff. Plaintiff and defendant are strangers to each other. No question arises as to the *bona fides* of plaintiff. It bought the goods from Murat Bey and paid for them. Defendant put it into Murat Bey's power to obtain plaintiff's money to pay for the goods. It assented to the resale by shipping the goods to the subpurchaser and allowing Murat Bey to take the postal receipts to obtain the money from the subpurchaser which paid for them. As between two innocent victims of the fraud, the one who made possible the fraud on the other should suffer. (Personal Property Law, § 104; *Dows* v. *Kidder*, 84 N. Y. 121, 128; *Parker* v. *Baxter*, 86 N. Y. 586, 591.) "

Upon this record plaintiff can be said to have put it in Goldman's power, by an affirmative act, to obtain Scholar's money to pay for the watch. The original entrusting to Diamond was terminated as to all except Provident by the pledge of the watch with the latter. Plaintiff's failure to observe that

the pawn ticket was made out in Goldman's name, even though grossly negligent, would not be enough to preclude him, but if plaintiff did observe Goldman's name on the ticket and failed to take any steps to obtain the watch or at least to notify Provident that he was the owner, that would be analogous to defendant's allowing Murat Bey to take the postal receipts in the cited case.

Accordingly, the action must be severed and the judgment dismissing the complaint against defendant Scholar must be reversed and a new trial granted.

The judgment in favor of defendant Provident Loan Society of New York should be affirmed, with costs, and the judgment in favor of defendant Scholar Diamond Co., Inc., should be reversed, action severed and a new trial ordered, with costs to appellant to abide the event.

SHIENTAG, J. (concurring). I concur with HECHT, J. on the disposition of the appeal as to the Provident Loan Society; I concur in the result as to the defendant Scholar Diamond Co., Inc.

EDER, J. (dissenting). With respect to Provident Loan my dissent is placed upon the ground that it, as a bailee, did not use that degree of care, before delivering the pledged article to Goldman, as a reasonably prudent person should have done, in the circumstances.

A pawnbroker is a bailee and is subject to the rules of law applicable to such a status and relationship.

In addition to the statutes, the common law regulates the duties of pawnbrokers and as there are many instances where statute law is silent, the common law provides rules governing the obligations of a contract of pawn and fixing the duties imposed upon the parties.

The obligation and duty of a bailee is to deliver the property bailed to the bailor or other person rightfully entitled to its return. A pawnbroker must use care and diligence in respect of the property pawned as an ordinarily prudent person would usually bestow on property of a like nature under similar circumstances (*Stich* v. *Samek,* 19 Misc. 534). A bailee is liable not only for losses occasioned by his negligence but for those which arise from innocent mistakes in the delivery of the bailed property to persons not entitled thereto (*Bank of Oswego* v. *Doyle,* 91 N. Y. 32, 42).

Provident Loan is a pawnbroker. Under the statute (General Business Law, § 44) every pawnbroker is required, at the time

of loan, to deliver to the pawnor, a memorandum or note signed by him, containing an account and description of the article pawned, the sum loaned thereon, the date of pledge, the rate of interest and the name and address of the pawnor (General Business Law, § 43).

This memorandum or note is what is commonly known as a pawn ticket. The *holder thereof*, is by the terms of the statute, presumed to be the person entitled to redeem the pledged property and the pawnbroker is required, upon payment of the principal and interest, to deliver the property to the person *presenting the pawn ticket.*

If the pawn ticket be lost or mislaid the pledgor may apply to the pawnbroker for the issuance of a " second " *or* " stop ticket " (General Business Law, § 44); the pledgor is required to examine the books of the pawnbroker and find the entry for the pawned article and to give a proper description of it; failure to comply with these requisites authorizes the pawnbroker to deliver the pledge to any person producing the pawn ticket for the redemption thereof (General Business Law, § 44).

In the case at bar, Goldman, who was entrusted by Diamond (plaintiff's agent) to pawn the articles, did not ask for the issuance of a " second " ticket — which term I take it means a duplicate of the original pawn ticket — but received and accepted a " stop ticket ". The stop ticket is not accepted as evidence of ownership and Provident's practice was not to release the collateral upon presentation thereof; the stop ticket is treated only as a warning not to surrender the collateral to anyone presenting the original ticket and its manifest object is to enable the pawnbroker to require the parties to satisfy him as to who is entitled to the delivery of the pawn before he surrenders it. In so acting, in such circumstances, he is, at least, prima facie, acting as an ordinarily prudent person would be expected to and would act. If he be still in doubt as to ownership and as to whom delivery should be made, ordinary prudence would require him to refuse delivery to either until ownership of the pawned article is determined by a court of competent jurisdiction.

The major opinion states (p. 902): " Once a stop is placed on an article, only the pledgor of record may redeem it by proving his ownership."

This necessarily and at once puts the pawnbroker on notice that there may be a claim of ownership of the pawned property by someone other than the original pledgor of record and thus imposes upon the pawnee, as a bailee, the duty to exercise

due care and diligence, in the circumstances, before delivering the article to the original pledgor or to anyone else claiming the property, and if he acts heedlessly, negligently, carelessly or with indifference and delivers the property to a nonholder of the original pawn ticket he acts at his peril for a pawn ticket is negotiable and may be sold, transferred or assigned; and though it is not a negotiable instrument in the sense that that term is used in mercantile law or in statutes like the Negotiable Instruments Law, it is, nonetheless, a negotiable instrument, perhaps more correctly styled a nonstatutory negotiable instrument.

"Negotiable" as commonly applied to paper is a term of classification and does not necessarily imply anything more than that the paper has the negotiable quality, i.e., that which may be sold, transferred or assigned, when it is capable of transfer from one person to another in such manner as to constitute the transferee the holder thereof (*Robinson* v. *Wilkinson*, 38 Mich. 299).

In addition to its negotiable quality a pawn ticket possesses other qualities. It is not a mere receipt; it is something more than that; it is an indicia of ownership of the pledged property; it is also a voucher or warrant for the delivery to the holder thereof of the property represented by it, and as the statute itself declares (General Business Law, § 44) the *holder* of a *pawn ticket* is the presumptive owner of the pledge and entitled to redeem it and the pawnbroker is required to deliver the article to the person presenting the pawn ticket, unless, of course, he knows the contrary to be the fact or is put upon notice.

Provident, as a pawnbroker, knew, of course, that the pawn ticket was negotiable, the subject of sale, transfer or assignment; it recognized that fact for it did not issue to Goldman, the pledgor of record, a "second" or duplicate pawn ticket but only a "stop ticket", expressly reciting that: "The issuance of this ticket confers no rights on the holder."

Provident was thus clearly put upon notice that the original pawn ticket might have been negotiated by Goldman and be in the possession of some other person who might present the same for redemption of the pledge and claim ownership thereof.

Possessed of this notice and knowledge, it is my view that Provident was negligent, and failed, as a bailee, to exercise a proper degree of care in delivering the pawned article to Goldman without exacting from him some form of indemnity to run for a reasonable time to make certain of the return of

the article or payment of its value to a possible purchaser and holder of the pawn ticket who might later appear and demand the return of the pawn, and that an ordinarily prudent person, in such a situation, would have done so. Whether Provident so acted, was, I think, a question for the jury, under all the circumstances.

In this connection the majority of the court takes the position that section 44 of the General Business Law imposes no duty on the pawnee to require an indemnification bond before surrendering the article in a case where the pledgor of record is unable to produce the original pawn ticket and that it would cause hardship to such pledgors who were unable to obtain a bond.

I am constrained to disagree. If hardship results it has not been occasioned by any act of the bailee but is solely due to the conduct of the pawnor, who, in all fairness and justice, should bear it. The mere fact that the statute imposes no requirement on either the pawnor or pledgee to furnish or demand indemnity, does not, in my opinion, relieve the bailee of the duty to exercise a proper degree of care.

The major opinion cites *Freudenheim* v. *Gutter* (201 N. Y. 94, *supra*) and *Mann* v. *Simpson & Co.* (286 N. Y. 450, *supra*) as decisive that upon the facts in the instant case Provident cannot be held liable to plaintiff, but I think they are inapplicable here as they did not involve a comparable situation; they deal, primarily, with the question of apparent ownership *at the time of pawn;* they did not involve either the negotiable quality of a pawn ticket and its effect, or the particular feature of a lost or mislaid original pawn ticket, or the duty of the pawnee in such a situation, or the degree of care required of him before delivering the pawn to the original pledgor of record. None of the other cases cited in the prevailing opinion herein involve a like or comparable factual situation. Hence, I am of opinion that none of those cases are of aid in the solution of the particular question before us.

I am also unable to see that sections 43 and 44 of the General Business Law or subdivisions 1 and 3 of section 43 of the Personal Property Law (Factors' Act) absolved Provident as pawn broker, in the mentioned situation, from liability for a *wrongful return* of the pledge merely because Goldman was the presumptive owner *at the time of pawn.*

*At the time of redemption* a different situation is present. It is *not* the presumptive owner at the time of pawn who is deemed by the statute to be the person who is entitled to redeem

the pledge, but the *holder* of the *pawn ticket* at the *time of redemption,* and *delivery* of the property is required to be made *to him.*

As I comprehend these provisions they do not grant to the pawnbroker, in the situation here described, exemption or immunity from liability as the prevailing opinion imputes.

" Every bailee is bound, at his peril, to know that the person to whom he delivers the chattel is the proper person to receive it, and if he delivers it to the wrong person, though acting in perfect good faith, he is nevertheless liable for its conversion." (3 Am. & Eng. Encyc. Law [2d ed.], pp. 754-755.)

It is my conclusion that in view of the negotiable quality of the pawn ticket, and the situation disclosed, that Provident did not, as a bailee, exercise a proper degree of care in delivering the pledge to Goldman, or act as an ordinarily prudent person would and should have acted, and that it thus manifested a culpable indifference to the safety of the property delivered to its care. Whether it did or not, in my opinion, was a question for the jury, in any event.

Upon the record presented I am unable to agree that Provident, as a matter of law, is exonerated from liability to plaintiff, either by statute or by decisional law, and I accordingly dissent.

As to defendant Scholar, its title to the property was derived from Goldman and if he had none he could give no title to it; a thief can give no title to stolen property. Nothing plaintiff did ratified the acts of Goldman.

Scholar contends that an estoppel should be declared against plaintiff inasmuch as he could have prevented the loss if he had, in due time, notified Provident that he was the holder of the pawn ticket, and that, as between it and plaintiff he should shoulder the loss; that Scholar was an innocent purchaser for value and that the rule should be applied that as between two innocent victims of a fraud the one who by his conduct or neglect made the fraud possible should suffer the loss.

The rule is inapplicable where property is stolen or otherwise feloniously obtained. Plaintiff was under no duty to notify Provident that he owned the property and held the pawn ticket. An owner of a pawn ticket need not assume that someone will indulge in fraud or crime or may do so to obtain possession of the pawned article; he has a right to assume the contrary.

The fact that Scholar purchased in good faith is immaterial; a wrongful intent is not essential to a conversion, it being sufficient that the owner has been deprived of his property by

another's unauthorized assumption over it, so that evidence of good faith is inadmissible (*Douglass* v. *Scott,* 130 App. Div. 322, 470).

I do not see that subdivision 1 of section 104 of the Personal Property Law vests Scholar with good title to the property sold to it by Goldman. The effect of that provision is to preclude the owner from denying the seller's authority to sell even though he acquired possession feloniously, by trick or device, if the owner has done an affirmative act which put it in the power of the seller to defraud the purchaser.

It is stated in the controlling opinion that upon this record plaintiff can be said to have put it in Goldman's power, by an *affirmative* act, to obtain Scholar's money to pay for the article. I disagree. I find no evidence to support such a conclusion or to warrant a finding to that effect.

The governing opinion determines that as to Provident the judgment dismissing the complaint should be affirmed and that the action must be severed and the judgment dismissing the complaint against defendant Scholar must be reversed and a new trial granted.

In respect of the disposition thus made I am in accord that the judgment dismissing the complaint as to Scholar must be reversed and a new trial granted but I dissent from the determination made as to the defendant Provident and that the action should be severed as to defendant Scholar.

The judgment should be reversed and a new trial ordered as to both defendants.

SHIENTAG, J., concurs with HECHT, J., in memorandum; EDER, J., dissents in opinion.

Judgment affirmed, etc.